UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORIO BAUTISTA, on behalf of himself
and others similarly situated,

                                      Plaintiff,

      -against-

SRISUK, INC. d/b/a BEYOND THAI KITCHEN,
LUANGPUDOO CORP., d/b/a BEYOND THAI KITCHEN,
BEYOND THAI KITCHEN, INC., and/or any other corporate
entity doing business as BEYOND THAI KITCHEN,
located at 133 West 3rd Street, New York, New York,
PANTIPA VEERAPORNPHIMON, and
DARUN LAMNAOTRAKOON, individually,

                                Defendants.

Case No.: 14 cv 4335
(LGS)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S' MOTION FOR PARTIAL SUMMARY JUDGMENT**

CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………......………………………i-ii

PRELIMINARY STATEMENT…………………………………………………………1

STATEMENT OF FACTS……………………………………………………………...2

ARGUMENT………………………………………………………………………….2

  POINT I …………………………………………………………………………....2

  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
  SHOULD BE GRANTED IN ITS ENTIRETY…………………………...……………...2

    A.  *Summary judgment standard*………………………………......………………2

    B.  *The court should apply the substantial continuity test*
       *to determine whether successor liability can be imputed*
       *to the defendants*…………………………………......…………………………..3

    C.  *There is no genuine issue of material fact in dispute that*
       *successor liability can be imputed to the defendants under*
       *the substantial continuity test*…………………………………......…………………7

        i.      *Notice of the Charge*……………………………......……………10

        ii.     *Ability of Predecessor to Provide Relief*………………………..13

        iii.    *Substantial Continuity of Business*……………………………...13

        iv.    *Same plant*………………………………………………………14

        v.      *Same or substantially the same* workforce.....................................14

        vi.    *Same or substantially the same supervisory personnel*...............15

        vii.   *Same jobs under same working conditions*....................................15

        viii.  *Same machinery/equipment*…………...….……………………15

        ix.    *Produces the same product*............................................................16

  POINT II………………………………………………………………………….16

  AS AN "EMPLOYER," DEFENDANT PANTIPA VEERAPORNPHIMON IS
  INDIVIDUALLY LIABLE FOR THE DEBTS OF THE PREDECESSOR…………...16

  CONCLUSION………………………………………………………………...……17

## TABLE OF AUTHORITIES

**Cases**

*Abdel-Khalek v. Ernst & Young, LLP*, No. 97 Civ. 4514,
1999 U.S. Dist. LEXIS 2369 (S.D.N.Y. Apr. 7, 1999)……………………………11

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F. 3d 132 (2d Cir. 2008)…..…….…...6

*Battino v. Cornelia Fifth Avenue, LLC*,
861 F.Supp.2d 392 (S.D.N.Y. 2012)…………………………………… 3, 4, 5, 7, 10, 11

*Brock v. LaGrange Equip. Co.*, 1987 U.S. Dist. LEXIS 14532,
1987 WL 39105 (D. Neb. 1987)…………………………………………………….4, 5

*Brzozowski v. Correctional Physician Services, Inc.*, 360 F. 3d 173 (3d Cir. 2004)……..5

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003)…………..…………...3

*Chao v. Concrete Mgt. Resources, LLC*, 2009 U.S. Dist. LEXIS 18619,
2009 WL 564381 (D. Kan. March 5, 2009)………..…………………………………4

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F. 3d 158 (2d Cir. 2006)……….2

*D.L. Baker, Inc. t/a Baker Elec. & Its Alter Ego &/or Successor Baker Elec., Inc.;
Herndon Animal Med. Ctr., Inc.; & Daniel L. Baker, & Maggie Barry,
Individually & Int'l Bhd. of Elec. Workers , Local Union No. 26*,
351 NLRB 515 (2007)……………………………………………………………12

*E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505 (W.D.N.Y. 2007)……..4-5, 6-7

*Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S. Ct. 2225,
96 L. Ed. 2d 22 (1987)……………………………………………...…………….7-8

*Golden State Bottling Co., Inc. v. N.L.R.B.*, 414 U.S. 168, 94 S. Ct. 414,
38 L. Ed. 2d 388 (1973)………………………………………………………….4

*Herman v. RSR Sec. Servs.*, 172 F. 3d 132 (2d Cir. 1999)……………………………17

*Kwan v. Andalex Group LLC*, 737 F. 3d 834 (2d Cir. 2013)............................................. 2

*Kwong v. Bloomberg*, 723 F. 3d 160 (2d Cir. 2013)......................................................... 2

*MTA Trading, Inc. v. Kirkland*, 84 A.D. 3d 811, 922 N.Y.S. 2d 488 (2d Dep't. 2011)…..5

*New York v. National Service Industries, Inc.*, 460 F. 3d 201 (2d Cir. 2009)……………3

i

*Pinto v. Allstate Ins. Co.*, 221 F. 3d 394 (2d Cir. 2000)..........................................3

*Redd v. N.Y. Div. of Parole*, 678 F. 3d 166 (2d Cir. 2012)........................................2

*Rojas v. TK Communications, Inc.*, 87 F. 3d 745 (5th Cir. 1996)..........................5

*Sciascia v. Rochdale Village, Inc.*, 851 F. Supp. 2d 460 (E.D.N.Y. 2012).................3

*Song v. 47 Old Country, Inc.*, No. 09 Civ 5566,
    2013 U.S. Dist. LEXIS 143399 (E.D.N.Y. Oct. 3, 2013)..............................5, 6

*Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995)............................................5

*Thompson v. Bruister and Associates, Inc.*, 2013 U.S. Dist. LEXIS 36057,
    2013 WL 1099796 (M.D. Tenn. 2013)....................................................4, 5

*Usery v. Broadway Inn & St. Louis Federal Savings and Loan*,
    84 Lab. Cas. (CCH) 33 (W.D.Mo. 1978)................................................5

*Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402,
    2010 U.S. Dist. LEXIS 62653 (S.D.N.Y. June 23, 2010)...............................5

*Zheng v. Liberty Apparel Co., Inc.*, 355 F. 3d 61 (2d Cir. 2003)..........................17

**Statutes**
Fed. R. Civ. P. 56(a)........................................................................2

29 U.S.C. § 203(d), (e), (g)..............................................................17

## PRELIMINARY STATEMENT

Defendant, Beyond Thai Kitchen, Inc., owns, operates and controls a Thai restaurant known as "Beyond Thai Kitchen", located at 133 West 3rd Street, New York, New York. The individual defendant, its sole shareholder, Pantipa Veerapornphimon, purchased the restaurant, as a going concern on May 2, 2014. The restaurant had been in business for several years prior, and never actually closed. The restaurant had engaged in illegal labor practices for years: unlawfully withholding minimum wages and overtime compensation the plaintiff Gregorio Bautista ("plaintiff").

This motion seeks to establish successor liability with regards to the claim of Gregorio Bautista, against Ms. Veerapornphimon and the corporate entity she established, Beyond Thai Kitchen, Inc. (collectively, the "the defendants"), after acquiring possession of the restaurant and assuming its operations from the predecessor corporation, Srisuk, Inc. d/b/a Beyond Thai Kitchen, and its purported shareholder Darun Lamnaotrakoon (collectively, "Srisuk").[1] Under federal labor statutes, including the Fair Labor Standards Act ("FLSA"), successor liability may be imputed to the succeeding owner and entity where there is a "substantial continuity" in the operation of the business post-acquisition. For the reasons more fully set forth herein, this standard is met here.

In opposition to this motion we understand that the defendants' will seek an order declaring that they cannot be held liable for the alleged wage and hour violations of their predecessor, that plaintiff's motion should be denied in its entirety, and that summary judgment dismissing the complaint should be granted. As such, both sides respectfully

---

[1] The Srisuk defendants did not appear in the action and the case against them has been voluntarily dismissed.

submit that this issue is ripe for determination based upon the record and respectfully seek a determination as to the standard of successor liability to be applied in this case, and the application of that standard to facts not in dispute.

## STATEMENT OF FACTS

The undisputed material facts as set forth in Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 (the "Rule 56.1 Statement"), are fully incorporated herein, and are only restated where necessary for emphasis or explanation.

## ARGUMENT

## POINT I

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED IN ITS ENTIRETY

### A. *Summary judgment standard*

Summary judgment is proper when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Kwan v. Andalex Group LLC*, 737 F. 3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F. 3d 160, 164-65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F. 3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F. 3d 158, 162 (2d Cir. 2006) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The "mere existence

2

of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F. 3d 394, 398 (2d Cir. 2000).

On cross-motions for summary judgment, the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *See Sciascia v. Rochdale Village, Inc.*, 851 F. Supp. 2d 460 (E.D.N.Y. 2012) (*citing Heublein, Inc. v. United States*, 996 F. 2d 1455, 1461 (2d Cir. 1993)).

### B. The court should apply the substantial continuity test to determine whether successor liability can be imputed to the defendants

Under common law, a purchaser of the assets of a corporation is generally not liable to the seller's creditors except where (1) the successor expressly or impliedly assumes the predecessor's liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) where the transaction is entered into fraudulently to escape such obligations. *See New York v. National Service Industries, Inc.*, 460 F. 3d 201, 209 (2d Cir. 2009). The second and third exceptions have been recognized to be "so similar that they may be considered a singly exception. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n. 3 (2d Cir. 2003). Essentially, it has been held that where ownership changes hands, there can be no finding of either exception. *Battino v. Cornelia Fifth Avenue, LLC*, 861 F.Supp.2d 392, 401 (SDNY 2012).

In contrast, the substantial continuity test, which was first utilized by the Supreme Court in *Golden State Bottling Co., Inc. v. N.L.R.B.*, 414 U.S. 168, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973), is an equitable approach aimed at protecting employees victimized by unfair labor practices (holding that successor was required to comply with NLRB order for reinstatement and back pay issued against prior owner because protecting employee rights deemed to outweigh cost to successor as well as the successor's ability to protect itself against such liability with an indemnity agreement).

Although the Second Circuit has yet to rule directly on whether the test should apply in a FLSA case of successor liability, it is clear that the majority view by Courts in this District, is that it should. *See Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 402 (S.D.N.Y. 2012).

In applying the substantial continuity test, the Southern District has appropriately recognized that FLSA cases are driven by the same policy concerns raised in other labor law cases, and additionally, has taken guidance from FLSA cases decided outside of this circuit. *See Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012), *citing Steinbach v. Hubbard*, 51 F.3d 843, 845-46 (9th Cir. 1995); *Chao v. Concrete Mgt. Resources, LLC*, 2009 U.S. Dist. LEXIS 18619, 2009 WL 564381, (D. Kan. March 5, 2009); *Brock v. LaGrange Equip. Co.*, 1987 U.S. Dist. LEXIS 14532, 1987 WL 39105 (D. Neb. 1987); *Thompson v. Bruister and Associates, Inc.*, 2013 U.S. Dist. LEXIS 36057, 2013 WL 1099796 (M.D. Tenn. 2013).

In addition, since its decision, courts have interpreted and expanded the successor liability analysis of *Golden State Bottling* to various areas of labor law, including employment discrimination. *See, e.g., E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp.

2d 505, 512 (W.D.N.Y. 2007) (Title VII), opinion of Magistrate Judge adopted by District Court, *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 688 F. Supp. 2d 193, 200 (W.D.N.Y. 2000); *Brzozowski v. Correctional Physician Services, Inc.*, 360 F. 3d 173, 177 (3d Cir. 2004) (Title VII); *Rojas v. TK Communications, Inc.*, 87 F. 3d 745, 750 (5th Cir. 1996) (Title VII); *MTA Trading, Inc. v. Kirkland*, 84 A.D. 3d 811, 815, 922 N.Y.S. 2d 488, 491 (2d Dep't. 2011) (NY State Human Rights Law).

Moreover, courts outside this circuit have routinely held that the substantial continuity test should also be applied in an FLSA case of successor liability. *See Steinbach v. Hubbard*, 51 F. 3d 843, 845-46 (9th Cir. 1995); *Thompson v. Bruister and Associates, Inc.*, No. 07 Civ. 412, 2013 U.S. Dist. LEXIS 36057, at *22-23 (M.D. Tenn. Mar. 15, 2013); *Usery v. Broadway Inn & St. Louis Federal Savings and Loan*, 84 Lab. Cas. (CCH) 33,7095 (W.D.Mo. 1978); *Brock v. LaGrange Equip. Co.*, 1987 U.S. Dist. LEXIS 14532, *4 (D. Neb. July 14, 1987) ("The policies of the FLSA, like those of the Labor Management Relations Act, implicate concern for employees who are "especially in need of help and may be without meaningful remedy when title to the employing business operation changes hands.")

And, courts in this Circuit, including this District, have held that the substantial continuity test should be applied in a FLSA case of successor liability. *See Song v. 47 Old Country, Inc.*, No. 09 Civ. 5566, 2013 U.S. Dist. LEXIS 143399, at *17-18 (E.D.N.Y. Oct. 3, 2013) (*reversed on other grounds*, 2014 U.S. App. LEXIS 17824 (2d Cir. 2014); *Battino, supra*, 861 F. Supp. 2d at 404 (S.D.N.Y. 2012); *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 U.S. Dist. LEXIS 62653, at *2-3 (S.D.N.Y. June 23, 2010). Similar to *Battino*, the Eastern District in *Song* recently held that "in light of the

[Second Circuit's] widespread acceptance of the substantial continuity test in the labor law context, the better view is to apply that test in context of FLSA claims of successor liability. This approach is in accord with cases routinely applying the doctrine in other areas of labor and employment law." In applying the substantial continuity test, the Court in *Song* went on to state:

> The court's decision is also in accord with policies under the FLSA. Like the labor law policies referred to in *Golden State Bottling*, and other employment law cases, the FLSA exists to protect workers from unfair workplace practices and conditions (citations omitted). Imposing successor liability under equitable circumstances serves the policy of making workers whole and ensuring that they receive proper wages due. Similarly, equitable application of the test allows courts the leeway to ensure that those rights are properly weighed against the rights of a bona fide purchaser of an ongoing business (citation omitted). Additionally, application of the substantial continuity test in a FLSA case is in accord with the thinking of the majority of courts that have discussed the issue – both within and outside of this circuit (citations omitted).

*Song, supra,* 2013 U.S. Dist. LEXIS 143399, at *17-18.

In light of these policy considerations, and the Second Circuit's instruction to use a "flexible" approach in applying the FLSA, *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F. 3d 132, 141 (2d Cir. 2008), this Court should similarly follow the majority view and apply the broader substantial continuity test used in other labor and employment law contexts in assessing successor liability in this FLSA case.

Courts adopting the substantial continuity test characterize it as an equitable approach that balances: (1) the interests of the defendant-employer; (2) the interests of the plaintiff-employee; and (3) the goals of federal policy. *Nichols Gas & Oil, supra,* 518

F. Supp. 2d at 512. As a guide to equitable application of these three interests, courts consider the following nine (9) factors:

> (1) whether the successor company had notice of the charge;
>
> (2) the ability of the predecessor to provide relief;
>
> (3) whether there has been a substantial continuity of business operations;
>
> (4) whether the new employer uses the same plant;
>
> (5) whether he uses the same or substantially the same work force;
>
> (6) whether he uses the same or substantially the same supervisory personnel;
>
> (7) whether the same jobs exist under substantially the same working conditions;
>
> (8) whether he uses the same machinery, equipment and methods of production; and
>
> (9) whether he produces the same product.

*Id.* at 513; *see also Battino, supra,* 861 F. Supp. 2d at 404; *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S. Ct. 2225, 96 L. Ed. 2d 22 (1987) (*citing EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F. 2d 1086, 1094 (6th Cir. 1974)). In this analysis, "[n]o one factor is controlling, and it is not necessary that each factor be met to find successor liability." *Battino, supra,* 861 F. Supp. 2d at 404.

> **C.** ***There is no genuine issue of material fact in dispute that successor liability can be imputed to the defendants under the substantial continuity test***

As stated above, the substantial continuity test examines "whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's operations." *Fall River Dyeing &*

7

*Finishing Corp.*, *supra*, 482 U.S. at 43 (citations omitted). In the present case, all of the nine factors exist to support a finding of successor liability against the defendants.

For ease of reference, we have created a chart to illustrate the commonality between the predecessor, and the successor defendants, and the satisfaction of the aforementioned factors, prior to the detailed discussion below:

| Factor | Srisuk, Inc. | Beyond Thai Kitchen, Inc. | Supports Successor Liability? |
|---|---|---|---|
| Whether the successor company had notice of the charge prior to acquiring the business or assets of the predecessor | N/A | The charge was made in March 2014, two (2) months prior to the purchase, and, with due diligence, the defendants would have had knowledge of the charge. The purchaser (successor) first became aware of the business in April 2014, while the predecessor, its attorney, and accountants were discussing settlement. | Yes |
| The ability of the predecessor to provide relief | Does not conduct business and the whereabouts of shareholder/owner is unknown. | N/A | Yes |
| Substantial continuity of business operations | Operated a Thai restaurant known as "Beyond Thai Kitchen" at 133 West 3rd Street, New York City, with same phone number and menu as predecessor; serving Thai cuisine. | Operates Thai restaurant known as "Beyond Thai Kitchen" at 133 West 3rd Street, New York City, with same phone number and menu as successor; serving Thai cuisine. | Yes |

| Factor | Srisuk, Inc. | Beyond Thai Kitchen, Inc. | Supports Successor Liability? |
|---|---|---|---|
| Use of the same "plant" | All fixtures are the same, including kitchen equipment (pots, pans, appliances), and dining room fixtures (tables, chairs, bar) | All fixtures are the same, including kitchen equipment (pots, pans, appliances), and dining room fixtures (tables, chairs, bar) | Yes |
| Use of the same or substantially the same workforce | | The defendant claims lack of knowledge as to which employees were employed by the predecessor employer, however Mr. Bautista confirms that at least some of the employees are unchanged. For example, the current chef and delivery persons are the same individuals who worked for the predecessor. | Yes |
| Use of the same or substantially the same supervisory personnel | The chef, who is in charge of the kitchen, is unchanged. | The chef, who is in charge of the kitchen, is unchanged. | Yes |
| Same jobs exist under the same working conditions | Cooks, kitchen helpers, delivery persons | Cooks, kitchen helpers, delivery persons | Yes |
| Use of the same machinery and equipment | Stove, refrigerators, fryers, etc. | Stove, refrigerators, fryers, etc., all unchanged | Yes |
| Produces the same product | Thai cuisine; | Thai cuisine; uses the same menu as predecessor; admits that restaurant is a continuation of the prior restaurant. | Yes |

The first factor under the substantial continuity test – whether the successor had knowledge of the labor claims prior to assuming operations – is satisfied because Ms. Veerapornphimon had actual (or, at a minimum, can be charged with constructive) knowledge of the manner in which the predecessor entity paid its employees. Moreover, Mr. Bautista's counsel had numerous communications with counsel for the predecessor corporation prior to the sale. As such, any inquiry by the defendants to the predecessor owner, or predecessor's attorney or accountant, would have yielded information about the claim. Defendant Beyond Thai Kitchen, Inc. and its sole shareholder have never alleged that they were misled by false information from the predecessor seller. Indeed, they appear to have taken steps to shield themselves from any such knowledge by not obtaining payroll, payroll tax, and basic information about the payroll practices of the predecessor. Moreover, defendants do not suggest that they made even a cursory inquiry as to whether a claim has been made. In *Battino v. Cornelia Fifth Avenue, LLC*, Judge Oetken went to lengths to describe how the predecessor company had warranted that it had conducted business in compliance with applicable laws and that "no event has occurred and that no circumstances exist that would result in a violation of, conflict with, or failure on the part of the seller to conduct the business in complaint with any applicable law; and that seller has not received notice regarding any violation of, conflict with, or failure to conduct the business in complaint with any applicable law." *Battino v. Cornelia Fifth Avenue, LLC*, 861 F.Supp.2d at 397, 2012 U.S. Dist. LEXIS at *15. And, in *Battino*, the seller also specifically warranted that "[t]here are, and have been, no violations of any other law respecting the hiring, hours, wages, occupational safety and

10

health, employment, promotion, termination or benefits of any business employee or other person in connection with the business." *Battino v. Cornelia Fifth Avenue, LLC*, 861 F.Supp.2d at 397, 2012 U.S. Dist. LEXIS at *15. In the case at bar, no such warranties were requested, or made. In fact, the defendants specifically disclaimed any knowledge of the business practices of the predecessor corporation and deny having any communications with the prior owner or its representatives (i.e., accountants or attorneys) concerning its prior business practices, or any claims which were made prior to the transfer. *See, e.g.*, defendants' responses to interrogatories and documents, Exhibit "A" and "C".[2] Defendant-shareholder Pantipa Veerapornphimon took affirmative steps specifically to avoid leaning about any such claims, *i.e.*, not communicating with the seller or its accountant and attorney; not requesting any warranties; not requesting payroll records or copies of payroll tax filings. While plaintiff cannot prove that the defendanrs herein had actual knowledge about this specific claim, it is clear that constructive knowledge can be imputed to the defendant by the fact that the predecessor had actual knowledge of Mr. Bautista's claims (and, with assistance of its attorney and accountant, had actively engaged in settlement discussions), and the successor specifically avoided any knowledge or inquiry, which would have yielded knowledge of the specific claim.

In similar labor law contexts, Courts in this Circuit have held that a successor had notice of a discrimination claim even where no formal claim or charge had been yet been filed. *See Abdel-Khalek v. Ernst & Young, LLP*, No. 97 Civ. 4514, 1999 U.S. Dist. LEXIS 2369, at *20-21 (S.D.N.Y. Apr. 7, 1999).

---

[2] Unless otherwise indicated, all Exhibits are annexed to the Declaration of Peter H. Cooper, Esq., dated October 30, 2014, submitted in support of this motion.

Prior to or upon assuming operations of the restaurant, Ms. Veerapornphimon could easily have become aware of the number of hours the employees of Beyond Thai Kitchen worked, and the pay practices of the predecessor entity simply by requesting copies of payroll records and/or speaking with the employees. In fact, Ladda Metintanarangsan, who is identified as the restaurant's chef, before and after the defendants acquired the restaurant in May 2014, could easily have provided the defendants with this information.

Although Ms. Veerapornphimon denies actual knowledge of the alleged labor violations, and the claim in particular, it is well established that even constructive knowledge is sufficient to impose successor liability, and once substantial continuity of operations has been established, it is the *successor's* burden to prove that it lacked actual or constructive knowledge. *See D.L. Baker, Inc. t/a Baker Elec. & Its Alter Ego &/or Successor Baker Elec., Inc.; Herndon Animal Med. Ctr., Inc.; & Daniel L. Baker, & Maggie Barry, Individually & Int'l Bhd. of Elec. Workers , Local Union No. 26*, 351 NLRB 515, 550 (2007) (inferring knowledge of predecessor's labor violations because successor "had the obligation to inquire further into the matter"); *see also In Re S. Bent & Bros.*, 336 NLRB 788, 790 (2001) (holding that "[r]esponsibility for establishing that a successor was without notice of its predecessor's unfair labor practices rests with the successor" and that liability can be imposed on successor where it has either "actual or constructive" knowledge of the underlying practices, including what it would have discovered had it exercised "reasonable diligence" in assuming operations of the business).

Notwithstanding Ms. Veerapornphimon's attempt to "bury her head in the sand" and proclaiming that she had no knowledge of the predecessor's business practices, constructive knowledge is easily established. Bautista and the predecessor company were both represented by counsel and engaged in extensive discussions regarding liability and damages. *See*, Exhibits "G", "H", "I", "J", and "K". This is not a situation of an innocent purchaser who exercised due diligence and failed to uncover evidence of any potential liability.

      *ii.*     *Ability of Predecessor to Provide Relief*

The second factor in the substantial continuity test is the ability of the predecessor to provide relief. Here, the predecessor entity, Srisuk, Inc. is not engaged in business and transferred *all* of its assets to the defendants in exchange for a mere ten thousand dollars ($10,000). Its purported shareholder, Darun Lamnaotrakoon, has not been located and plaintiff does not expect to be able to obtain relief from the predecessor corporation or its shareholder. It is clear that Srisuk, Inc. is "inactive," and Mr. Lamnaotrakoon's whereabouts are unknown to plaintiff.

Whether the predecessor non-appearing defendants are actually unable to pay or are simply employing tactics to avoid paying, the result is the same; namely, plaintiff will almost assuredly be unable to obtain relief from the predecessor entity and shareholder/owner. Consequently, the second factor weights in favor of the imposition of successor liability.

      *iii.*    *Substantial Continuity of Business*

The remaining seven factors are related in that each is aimed at determining the overall question of substantial continuity of the predecessor's business. Here, each of the

seven (7) remaining factors establish the continuity of the business operated by the predecessor, which does business under the same name, uses the same facilities, menu, hours of operation, telephone number, equipment, and at least some of the same personnel.

### iv.    Same plant

The Defendants admit that they operate the restaurant from the same physical location as its predecessor, to wit: 133 West 3rd Street in Manhattan.

### v.    Same or substantially the same workforce

Individual defendant Pantipa Veerapornphimon testified that "two or three" of the employees continued to work at the restaurant after the sale. Exhibit "E", pa 17. It is a relatively small restaurant with an alleged workforce of eight (8) individuals. Exhibit "B". Ms. Veerapornphimon did not know which employees were previously employed, but Mr. Bautista knows that at least the two (2) delivery persons and the chef were his coworkers and remain employed by the successor corporate and individual defendants. *See*, accompanying affidavit of Plaintiff Gregorio Bautista. Moreover, a public records search from the New York City Department of Health revealed that the restaurant's chef, "Ladda Metintanarangsan" is identified as being present for their routine inspection in August 2013, long prior to the purported sale. Exhibit "L"

In her deposition testimony and interrogatory responses, defendant has no knowledge of who worked for the restaurant prior to the sale. However because we have located records which demonstrate the chef is the same; because our client knows some of the current employees as his former co-workers; because the restaurant never ceased to operate; and, because no records exist otherwise, it is fair to assume that the restaurant

had substantially the same workforce in place on May 3rd (one day after the sale) as it did on May 1st (one day prior to the sale).

### vi.  Same or substantially the same supervisory personnel

In the kitchen where Mr. Bautista worked, his supervisor was the chef, who is the same individual working for the current individual owner and corporation. See, Affidavit of Gregorio Bautista, para. 12.

### vii.  Same jobs under same working conditions

After the defendants assumed operational control over the restaurant, the employees continued to perform the same job functions as they always had under the predecessor. Even the somewhat unique hours of operation remained the same, as noted by comparing the menus used by the restaurant prior to the sale of assets, and currently (i.e., subsequent to the transfer). *Compare*, Exhibit "M", with Affidavit of Gregorio Bautista, Exhibit "A".[3]

### viii.  Same machinery/equipment

The restaurant's equipment and fixtures remained unchanged. For the purchase price of ten thousand dollars ($10,000), which was the equivalent of less than one month's rent, the defendants purchased everything the restaurant had, including all fixtures, a commercial range, commercial deep fryer, a dishwasher, three refrigerators, three freezers, the bar, tables (18) and chairs, an ice machine, pots and pans, tables and chairs, and a "point of sale" computer system. *See*, Exhibit "C" and Exhibit "F", Rider, para. 40. The computer system alone, designed for use in the restaurant industry, would surely be worth more than the price paid for the entire restaurant. And clearly, there is not

---

[3] Even an apparent typographical error in the menus used by the "predecessor" owners was not corrected: the hour of operation and noted with "Pm" "Am" (most style guides suggest "a.m." and "p.m."). *Compare*, Exhibit "M" with affidavit of Gregorio Bautista, Exhibit "A".

any dispute that the restaurant's fixtures and virtually the entire kitchen are the same as those in use by plaintiff herein.

<em>ix.     Produces the same product</em>

Again, no dispute exists that the defendants, like their predecessor, operate a Thai restaurant in Greenwich Village, which has remained virtually unchanged following the asset transfer. In fact, the defendants continue to use the same menu as its predecessor.[4] In short, after the transfer of control of the restaurant in May 2014, after Mr. Bautista made a claim through an attorney and both sides were represented by counsel (and the restaurant's accountant was involved in the negotiations), the only noticeable change to the business is the name of the corporate entity from Srisuk, Inc. to Beyond Thai Kitchen, Inc.

Based on the foregoing, if the Court utilizes the substantial continuity test, which it should, summary judgment should be granted in plaintiff Gregorio Bautista's favor on the issue of successor liability, because no genuine issue of material facts are in dispute that could preclude a finding that the majority, if not all, of the factors are satisfied to impute liability to the defendants for the wage and hour violations committed against Mr. Bautista, by their predecessors.

<h2 style="text-align:center">POINT II</h2>

<h3 style="text-align:center">AS AN "EMPLOYER," DEFENDANT PANTIPA VEERAPORNPHIMON IS<br>INDIVIDUALLY LIABLE FOR THE DEBTS OF THE PREDECESSOR</h3>

Courts in this Circuit have held the principal of a successor corporation individually liable for a judgment against a predecessor where the individual is liable as

---

[4] The prices are slightly higher. Most items now cost 95 cents more. *Compare*, Exhibit "M" with affidavit of Gregorio Bautista, Exhibit "A".

an "employer" under the FLSA. Under the federal statute, each "employer" is jointly and severally liable for wages owed. *See Herman v. RSR Sec. Servs.*, 172 F. 3d 132, 139 (2d Cir. 1999). An "employer" is defined under the FLSA as one who "suffer[s] or permit[s]" an individual to work, and includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e), (g); *see also Zheng v. Liberty Apparel Co., Inc.*, 355 F. 3d 61, 69 (2d Cir. 2003) (noting that this is "the broadest definition [of 'employ'] that has ever been included in any one act") (citations omitted); *see also Herman, supra,* 172 F. 3d at 139 ("[T]he Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer") (*citing Falk v. Brennan,* 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973)).

In cases involving successor liability, any individual that meets the FLSA test for an "employer" is liable for the debts of the predecessor. *See Battino, supra,* 861 F. Supp. 2d t 409 (denying individual defendant's motion for summary judgment because as an "employer," basis existed to potentially holding individual jointly and severally liable with successor corporation for the predecessor's failure to pay proper wages to plaintiff under the FLSA and New York Labor Law).

Thus, if the Court were to impose successor liability to Beyond Thai Kitchen, Inc. under the substantial continuity test, which it should, those liabilities should be shared jointly and severally by Ms. Veerapornphimon.

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that the Court grant Plaintiff's motion for partial summary judgment and hold that Beyond Thai Kitchen, Inc., and its sole shareholder are jointly and severally liable as successors in interest to the

plaintiff's employers, together with such other, further, and different relief as the court determines to be just and proper under the circumstances.

Dated: New York, New York
October 30, 2014

Respectfully submitted,

CILENTI & COOPER, PLLC
**Attorneys for Plaintiff**
708 Third Avenue – 6th Floor
New York, New York 10017
T. (212) 209-3933
F. (212) 209-7102

By: _____
Peter H. Cooper (PHC 4714)