UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
GREGORIO BAUTISTA,                                          :
                                       Plaintiff,           :
                                                            :         14 Civ. 4335 (LGS)
            -against-                                       :
                                                            :         **OPINION AND ORDER**
BEYOND THAI KITCHEN, INC.,                                  :
                                       Defendant.           :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/17/2015

LORNA G. SCHOFIELD, District Judge:

   This action arises from alleged wage and hour violations, in contravention of the Fair Labor Standards Act ("FLSA"), that took place while Plaintiff Gregorio Bautista was employed at a restaurant owned and operated by Srisuk, Inc. ("Srisuk") and Darun Lamnaotrakoon, who were defendants until Plaintiff voluntarily dismissed this action against them. The two remaining Defendants, Beyond Thai Kitchen, Inc. ("BTK") and its sole shareholder Pantipa Veerapornphimon, purchased all of Srisuk's assets after Plaintiff stopped working at the restaurant. Plaintiff moves for partial summary judgment, seeking an order imposing successor liability on BTK and Veerapornphimon for unpaid wages allegedly owed to Plaintiff by Srisuk and Lamnaotrakoon. Defendants cross-move for summary judgment, seeking dismissal of the action in its entirety. For the following reasons, Plaintiff's motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.

**BACKGROUND**

   The following facts are taken from Plaintiff's Rule 56.1 Statement, which Defendants admitted in its entirety; undisputed facts from Defendant's Rule 56.1 Statement and other submissions filed in connection with this motion.

   Veerapornphimon is the sole shareholder of BTK. BTK was formed as an entity on April

17, 2014.  BTK operates a restaurant called "Beyond Thai Kitchen" (the "Restaurant"), located at 133 West 3rd Street in New York, New York.  On May 2, 2014, BTK purchased -- for $10,000 -- the assets of Srisuk, Inc., which previously conducted business at the same location as a restaurant also called "Beyond Thai Kitchen."  The assets BTK purchased included all furniture, fixtures and equipment at the Restaurant.

The Agreement and Bill of Sale between BTK and Srisuk (the "Purchase Agreement") provides, in relevant part:

1. Srisuk "guarantee[s] that the Restaurant and all other rights that are included are free of any debts, mortgages, security interests or other liens or encumbrances except as expressly stated in this Agreement";

2. Srisuk "indemnifies [BTK] with respect to any current debts and obligations connected in any way to the transfer of Restaurant that are not paid in full or are not otherwise expressly enumerated in this Agreement";

3. Srisuk "represent[s] that there is no known pending violation affecting the premises" and "[i]n the event that the representation is incorrect, [Srisuk] could choose to cure the violation within a reasonable period, or to cancel the contract and refund all deposit to [BTK]"; and

4. "[T]here are no actions pending against [Srisuk] in any court" or "any replevins, judgments or execution outstanding, now in force."

At her deposition, Veerapornphimon testified that she has never communicated with the owner of Srisuk or the owner's accountant.  On the buyer's side, the transaction apparently was conducted by Veerapornphimon's husband, who is not a shareholder of BTK.  According to Veerapornphimon, she and her husband learned of the opportunity to purchase Srisuk's assets in April 2014, and the closing occurred approximately a month later.  Defendants do not have access to any of Srisuk's tax returns.

Since purchasing Srisuk's assets, Defendants operate the Restaurant at the same location with the same name and phone number used by Srisuk.  Furthermore, the Restaurant has retained substantially the same appearance, hours of operation and menu that Srisuk previously used.  BTK currently pays a monthly rent of $10,506, and it deposited $21,102 with its landlord as security.  BTK represents that it employs eight employees, and documentary and testimonial evidence suggests that BTK's chef, Ladda Metintanarangsan, previously worked for Srisuk when it operated the restaurant.

Plaintiff Gregorio Bautista worked for Srisuk as a kitchen helper from September 2010 through March 2014.  While employed by Srisuk, Plaintiff received his wages in cash and did not receive any wage statements from Srisuk.  Defendants do not have access to any records of the hours worked by Plaintiff or the compensation that Plaintiff received from Srisuk.  Defendants represent that they have "no knowledge about the [business] practices of [Srisuk] with respect to the Plaintiff."  According to the New York State Department of State, Srisuk is still registered as an active corporation.

Prior to Defendants' purchase of Srisuk's assets -- from March 25, 2014, through June 16, 2014 -- Plaintiff negotiated with an attorney representing Srisuk concerning unpaid wages and overtime compensation that Srisuk allegedly owed Plaintiff.  Plaintiff and Srisuk reached a settlement in principle, agreeing that Srisuk would make payments to Plaintiff for unpaid wages.  On April 29, 2014, by e-mail, Srisuk's counsel informed counsel for Plaintiff that his client "will speak with [his] accountant" the following Monday, May 5, 2014, and that the first payment to Plaintiff could be made on May 15, 2014, and then "on the 15th of each successive month."  On May 7, 2014 -- five days after Defendants purchased Srisuk's assets -- Srisuk's attorney sent a

3

draft settlement agreement to Plaintiff. It appears that the agreement was never signed. On June 16, 2014, Srisuk's counsel communicated to Plaintiff by e-mail that he had "withdrawn from [his] representation of [Srisuk]" and that he was "not in a position to discuss the reasons for [his] withdrawal."

## **STANDARD**

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**DISCUSSION**

**I.      APPLICABILITY OF SUBSTANTIAL CONTINUITY TEST**

Before analyzing whether Defendants here may be held liable as successors to Srisuk, it is necessary to determine whether "substantial continuity" -- a test for successor liability -- is applicable to FLSA claims.  For the following reasons, the substantial continuity test applies in the FLSA context.

Plaintiff does not argue -- and presumably cannot -- that Defendants may be held liable as successors under the traditional New York common law test for successor liability, which generally requires continuity of ownership.  *See New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) ("Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 393, 401 (S.D.N.Y. 2012) (holding that no exceptions to traditional successor liability tests apply where "there is no dispute that ownership of the business changed hands").  In this case, the record shows no legal continuity of ownership.  Instead, Plaintiff argues that "substantial continuity," a broader test that does not require continuity of ownership, should apply.  *See id*. (citing *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987)).

The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context.  *See id*. at 402.  However, three circuits and several courts in this District have held that successor liability applies to FLSA claims; these courts reason that applying "substantial continuity" to FLSA claims was the "logical extension of existing case law," *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 151 (3d Cir. 2014), which already applies "substantial

5

continuity" to other labor and employment claims, *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995) (concluding that "successorship liability exists under the FLSA, as FLSA's "fundamental purpose is as fully deserving of protection as the . . . policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA," where successor liability had already been found to exist). *Accord Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013) ("[S]uccessor liability is appropriate in suits to enforce federal labor or employment laws -- even when the successor disclaimed liability when it acquired the assets in question -- unless there are good reasons to withhold such liability."); *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14 Civ. 580, 2015 WL 3947560, at *1 (S.D.N.Y. June 29, 2015) (applying successor liability to FLSA claim where predecessors sold defendants-successors assets for $40,000 and discarded "most of [its] accounting records and documents"); *Alvarez v. 40 Mulberry Restaurant, Inc.*, No. 11 Civ. 9107, 2012 WL 4639154, at *6 (S.D.N.Y. Oct. 3, 2012) (concluding that "a reasonable jury could find that [defendant] is a successor in interest . . . under the 'substantial continuity' test"); *Battino*, 861 F. Supp. 2d at 402-04; *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698, at *1 (S.D.N.Y. June 23, 2010) (finding that successor liability applied because "there was substantial continuity between the businesses, and there was the same workforce, same job titles, same supervisors, same machinery, and same products").

The reasoning in these decisions is persuasive. For example, in *Battino*, a court in this District stated that, because (1) "[c]ourts in this Circuit have applied this test in, *inter alia*, the Title VII context" and (2) the Second Circuit has instructed courts to "use a 'flexible' approach in applying FLSA," "application of the broader 'substantial continuity' standard used in other labor

and employment law contexts is appropriate in cases brought under FLSA." 861 F. Supp. 2d at 402-04 (citing *Barfield v. N.Y. City Health & Hospitals Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (noting that Congress intended FLSA's "'remedial' purpose . . . to 'have the widest possible impact in the national economy'")). The Seventh Circuit remarked, "In the absence of successor liability, a violator of [FLSA] could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the buyer) and then dissolving." *Teed*, 711 F.3d at 766.

Defendants' reliance on *New York v. National Service Industries, Inc.*, 460 F.3d 201, 215 (2d Cir. 2006) (Sotomayor, J.), is misplaced. The ruling there addressed substantial continuity only in the context of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and made no pronouncements concerning substantial continuity in FLSA cases. *See id.* at 204 (discussing "substantial continuity test" as "a CERCLA-specific rule"). Defendants are correct that several courts in the Eastern District of New York have applied the traditional common law and New York successor liability standards, but these decisions (1) mistakenly rely on *National Service* and (2) do not conclusively rule that substantial continuity is inapplicable to FLSA claims. *See, e.g.*, *Vasquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2010 WL 1223606, at *10 n.14 (E.D.N.Y. Mar. 26, 2010) (noting that "the case for successor liability may be more or less compelling than the case presented under the New York rule" but "regardless which test is applied, the result remains the same"); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 290 n.10 (E.D.N.Y. 2007) (finding *National Service* test "appropriately applied in the FLSA context" but noting that outcome would be same even if substantial

continuity applied); *see also, e.g.*, *Said v. SBS Electronics, Inc.*, No. 08 Civ. 3067, 2010 WL 1287080, at *3 (E.D.N.Y. Mar. 31, 2010) (limiting analysis to "de facto merger exception" to New York rule, as it was only exception plaintiff argued).

Accordingly, the substantial continuity test is applicable here.

## II.     APPLICATION OF SUBSTANTIAL CONTINUITY TEST

The law is unclear whether the substantial continuity test is to be decided ultimately by the Court or by the finder of fact.  Several district court decisions treat it as a question for the jury.  *See, e.g.*, *Alvarez*, 2012 WL 4639154, at *6; *E.E.O.C. v. Barney Skanska Const. Co.*, No. 99 Civ. 2001, 2000 WL 1617008, at *1 (S.D.N.Y. Oct. 27, 2000) ("On the record before the Court, no reasonable jury could conclude that defendants are successors in liability"); *see also E.E.O.C. v. Nichols Gas & Oil, Inc.*, 688 F. Supp. 2d 193, 201 n.6 (W.D.N.Y. 2010) (noting that, at oral argument, parties were asked if -- "assuming that the jury would decide any disputed issues of fact relating to the *MacMillan* factors" -- "the jury would then also balance the factors, or whether the Court would balance the factors, based on the jury's factual determinations," but remarking that parties ultimately agreed that, for purposes of cross-motions for summary judgment, "the Court may make all of the findings necessary to resolve the issue of successor liability"); *cf. Carter Enterprises, Inc. v. Ashland Specialty Co.*, 257 B.R. 797, 800 (S.D. W. Va. 2001) (in bankruptcy appeal, stating that successor liability presents "mixed question of fact and law").  For purposes of resolving these summary judgment motions, this Opinion assumes without deciding that the question is one for the jury and applies the usual summary judgment standard.

### A. Veerapornphimon

A threshold matter is whether Veerapornphimon, merely by virtue of her status as BTK's sole shareholder, may be subject to successor liability. For the following reasons, she may not.

For purposes of successor liability, the successor "is the party that actually purchases the assets of the predecessor and continues the predecessor's business." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). Successor liability may not be imposed on an individual where there is merely evidence that the individual incorporated the successor entity, is an officer or major shareholder of that entity and had notice of a plaintiff's claims. *Id.*

Moreover, "[c]ourts that have found majority or sole shareholders liable [under FLSA] have not relied solely on shareholder status, but have looked also to the degree of operational control a shareholder exerts over the corporation's functions." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 311 (S.D.N.Y. 2011) (collecting cases). Veerapornphimon's deposition testimony shows that -- despite her shareholder status -- she exerts little, if any, control over the corporation's functions, and that instead, her husband does.

Accordingly, on the record submitted with this motion, no reasonable jury could find that Veerapornphimon controls the corporation's operations. Plaintiff's motion for summary judgment against her is denied, and Veerapornphimon's motion for summary judgment is granted.

### B. Beyond Thai Kitchen, Inc.

By contrast, BTK is liable as Srisuk's successor.

The party advocating for successor liability bears the burden of proof. *Call Ctr. Technologies, Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 52 (2d Cir.

2011) ("Because the 'general rule' is that a purchaser of assets does not assume the predecessor's liability, it follows that the proponent of successor liability must offer proof that one of the [] exceptions to the general rule applies."). The substantial continuity test "focus[es] on whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" *Fall River*, 482 U.S. at 43 (quoting *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 173 (1973)). Courts applying substantial continuity generally look to nine factors articulated by the Sixth Circuit, specifically:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Musikiwamba*, 760 F.2d at 750 (citing *E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)); *accord Battino*, 861 F. Supp. 2d at 404 (applying *MacMillan* factors). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability." *Barney Skanska*, 2000 WL 1617008, at *2. Under this test, successor liability may be imposed on "a purchaser of select assets" -- "as distinct from the stock" -- of the predecessor company. *Id.* at *3. The *MacMillan* factors are addressed below.

### 1. Third, Fourth, Eighth and Ninth Factors

It is undisputed that the fourth and eighth factors -- use of the same plant and use of the same machinery, equipment and methods of production -- are satisfied here.

Also, the record contains ample evidence that the third and ninth factors -- "substantial continuity of business operations" and "same product" -- also are satisfied here.  In opposition, Defendants argue that, because "[t]he product, menu and even hours of operation are substantially the same in all Thai restaurant business," Plaintiff has failed to meet these factors with a meaningful level of particularity.  However, the record establishes that BTK's business shares similarities with Srisuk that are not common to all Thai restaurants; in particular, BTK kept the "Beyond Thai Kitchen" name that Srisuk previously used, did not change the Restaurant's phone number and utilizes a menu that is identical in substance to the menu used by Srisuk.  Indeed, BTK does not appear to have changed the Restaurant's logo on the menu, and BTK maintains the same, somewhat distinctive hours of operation that Srisuk did, closing on quarter hours.  Although new restaurant owners certainly do not have an "affirmative duty" to change their restaurant's menu or name, the absence of such a duty does not alter the substantial continuity analysis.  *Cf. Alvarez*, 2012 WL 4639154, at *6 (reasoning that reasonable jury could find successor liability on FLSA claim where successor "(1) uses the same location as [predecessor]; (2) employs many of the same personnel; (3) uses the same kitchen equipment . . . ; (4) offers the same menu as [predecessor], with food prepared by the same cook; (5) uses a Facebook page holding itself out as [same name as predecessor] . . . ; and (6) may employ . . . [same] floor manager").

These four factors therefore weigh heavily in favor of imposing successor liability on BTK.

### 2. Fifth Through Seventh Factors

The fifth through seventh factors address the successor company's workforce.

The evidence suggests that the seventh factor -- "whether the same jobs exist under substantially the same working conditions" -- is met here. A list of BTK's current employees show that BTK employs eight people in total: one chef, three line cooks, two deliverymen and two wait staff. Plaintiff testified that the chef and two deliverymen worked for Srisuk in the same capacities. Although the record is inconclusive as to the number of line cooks and wait staff Srisuk employed, Defendants do not present any serious arguments that the jobs or working conditions at the Restaurant have substantially changed.

On the other hand, a reasonable jury could find for either party on the fifth and sixth factors. The record is clear that BTK retained at least three of Srisuk's eight employees, but insufficient to conclude that BTK uses "the same or substantially the same work force." Likewise, it is clear that Defendants retained the chef previously employed by Srisuk, but the record is inadequate to determine whether Defendants use "the same or substantially the same supervisory personnel."

Thus, the workforce factors together weigh moderately in favor of successor liability.

### 3. Second Factor

The record contains insufficient evidence concerning *MacMillan*'s second factor -- "the ability of the predecessor to provide relief." Although New York State records reflect that Srisuk remains an active entity registered with the Secretary of State, it is unclear whether Srisuk continues to conduct business and whether Srisuk retained any assets after selling the Restaurant to BTK. Thus, the evidence does not show that, after the sale, Srisuk is able to provide Plaintiff

the relief he seeks.  As Plaintiff bears the burden of proof and is the moving party, the absence of evidence concerning the second factor militates against granting Plaintiff's motion.  *See Battino*, 861 F. Supp. 2d at 407-08 (concluding that "there are genuine issues of fact" as to this fact where corporate successors "technically still exist" but "the record is not at all clear what, if any, assets are held by these entities, and whether they actually have the ability to provide relief for Plaintiffs' claims").

### 4. First Factor

Although the evidence shows that BTK did not have actual notice of Plaintiff's claims, ample evidence suggests that it had constructive notice.  As constructive notice is sufficient for purposes of substantial continuity in the FLSA context, the first factor weighs in favor of imposing successor liability.

Courts have held that lack of notice of potential liability presents "a good reason[] . . . to withhold [successor] liability."  *Teed*, 711 F.3d at 766.  Several courts outside this Circuit have suggested that constructive notice is sufficient to establish notice for substantial continuity purposes.  *See Musikiwamba*, 760 F.2d 740 at 755 ("The successor must have had actual or constructive notice of the claim or charge of employment discrimination against the predecessor sufficiently in advance of the closing of the transaction to enable the successor to negotiate compensation for its exposure to the liability the plaintiff seeks to impose."); *Dominguez v. Hotel, Motel, Rest. & Miscellaneous Bartenders Union, Local No. 64*, 674 F.2d 732, 733 (8th Cir. 1982) (holding that, at time of acquisition, successor "had no direct or indirect knowledge of appellant's allegations of discrimination"); *Goodpaster v. ECP Am. Steel, LLC*, No. 09 Civ. 59, 2012 WL

5267971, at *1 (N.D. Ind. Oct. 24, 2012) (noting that notice factor was satisfied where defendant had "constructive notice" of plaintiff's claim).[1]

These decisions provide compelling policy reasons to impute constructive notice on successors who have failed to exercise due diligence.  In *Goodpaster*, for example, the court reasoned that "[a]n asset purchaser should not avoid successor liability . . . by playing an unspoken but mutually understood game of 'don't ask, don't tell.'"  2012 WL 5267971, at *4 n.3.  Rather, "[t]he proper rule is one that encourages shoppers for substantial assets simply to get the whole story and adjust their offers accordingly."  *Id.*

The record establishes that, here, Defendants exercised little, if any, diligence concerning Srisuk's liabilities prior to acquiring the Restaurant.  Based on the undisputed evidence, a reasonable jury could conclude only that BTK had constructive notice of Plaintiff's claims.  *See Goodpaster*, 2012 WL 5267971, at *4 (applying successor liability to FLSA claim where defendant "failed to show its ignorance of [plaintiff]'s suit was reasonable" and where defendant's "complete failure to ask about prospective liabilities . . . can hardly constitute due diligence with regard to 'all outstanding *potential*' obligations" (quoting *Musikiwamba*, 760 F.2d

---

[1]    *Accord Reed v. EnviroTech Remediation Servs., Inc.*, 834 F. Supp. 2d 902, 911 (D. Minn. 2011) (holding, in context of pension contribution liability, that "[t]he notice prong is satisfied by either actual or constructive knowledge . . . where an employee of the predecessor company who had knowledge of . . . liability begins employment with the successor company") (*citing Golden State*, 414 U.S. at 173); *Lipscomb v. Technologies, Servs., & Info., Inc.*, No. Civ. 09-3344, 2011 WL 691605, at *8 (D. Md. Feb. 18, 2011) (noting that, where plaintiff filed EEOC charge during negotiations between defendant-successor and predecessor, defendant would have been able to discover ongoing EEOC investigation "[w]ith some due diligence"); *E.E.O.C. v. 786 South LLC*, 693 F. Supp. 2d 792, 795 (W.D. Tenn. 2010) ("It is well-accepted that constructive notice may suffice under the successor liability doctrine, at least where the relevant charges have been filed with the EEOC.") (citing, inter alia, *Wiggins v. Spector Freight Sys., Inc.*, 583 F.2d 882, 886 (6th Cir. 1978), and *EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988)); *Scott v. Sopris Imports Ltd.*, 962 F. Supp. 1356, 1359 (D. Colo. 1997) (finding no evidence that successor had "constructive notice of an imminent, or even possible claim" under Title VII by plaintiff).

at 752)).  At a minimum, Defendants could have spoken to Srisuk's accountant concerning potential liabilities or spoken to the chef whom they retained concerning problems at the Restaurant.  *Cf. EEOC v. Sage Realty Corp.*, 507 F. Supp. 599, 612 (S.D.N.Y. 1981) (reasoning that successor could have learned of plaintiff's employment claims from predecessor's president, who served as consultant to successor).  Veerapornphimon's deposition, however, confirms that Defendants took no such steps.

      Defendants' argument that the facts are insufficient to "justify charging [a] completely innocent new owner [who was] never involved with the Plaintiff . . . with [the] responsibility" for Srisuk's actions is unpersuasive.  Indeed, although the Complaint does not allege any claims of fraud, case law from this Circuit addressing such claims is instructive.  Defendants here paid suspiciously little for the assets that they purchased from Srisuk.  The purchase price is less than what Defendants currently pay in rent and is less than half the security deposit that they placed for the lease.  Moreover, Veerapornphimon testified that she and her husband learned of the opportunity to purchase Srisuk's assets in early April and that the closing took place in short order -- approximately a month afterward.  These circumstances -- known to Defendants -- were at least suspicious, and appear nefarious when factoring in Srisuk's ongoing settlement discussions with Plaintiff at the time.  The Second Circuit has held, in the fraud context, that "[c]onstructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry."  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995).

15

### 5. Consideration of All Factors

Considering all of the *MacMillan* factors as applied to this action, a reasonable jury could only conclude that BTK is liable as a successor to Srisuk.

The reasoning in *Medina v. Unlimited Systems, LLC*, issued by another court in this Circuit, addressed analogous facts. 760 F. Supp. 2d 263 (D. Conn. 2010). In *Medina*, default judgment was entered against defendant-employer Unlimited Systems, LLC ("Unlimited") and its president for unpaid wages owed to plaintiffs-employees under FLSA. *Id*. at 264. Several months before the action was commenced, Unlimited's president created another company, U.S. Stucco LLC ("U.S. Stucco"), and transferred his interest in U.S. Stucco to his wife for $1.00 without any appraisal. *Id.* at 265. U.S. Stucco continued to operate in the same business in which Unlimited previously operated, albeit at a reduced scale. *Id.* The court held that, under both the traditional and "substantial continuity" tests for successor liability, U.S. Stucco was liable for the default judgment entered against Unlimited in its entirety. *Id.* at 273. The court reasoned, "It would be contrary to the remedial purposes of the FLSA to allow Unlimited Systems to shed its liability to its employees through the subterfuge of 'U.S. Stucco, LLC.' . . . [i]t would elevate form over substance to allow U.S. Stucco to escape liability for the amounts Unlimited Systems incurred in back wages and attorney fees and costs." *Id.* at 274 (citing *Golden State*, 414 U.S. at 184); *accord New 9th Ave Pearl on Sushi Inc.*, 2015 WL 3947560, at *5 (noting that, where "the restaurants were essentially the same, the new owner did not know basic facts about the operation of the business, and the new owner could not locate the bill of sale," a reasonable jury could conclude that "Defendants executed the transaction for no reason other than to avoid liability").

Similarly here, a reasonable jury could only conclude on the undisputed facts that BTK is subject to successor liability for any FLSA violations its predecessor may have committed. Plaintiff's motion for summary judgment is therefore granted as to BTK, and BTK's motion is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED as to BTK and DENIED as to Veerapornphimon.  Defendants' motion is GRANTED as to Veerapornphimon and DENIED as to BTK.

The Clerk of Court is respectfully directed to close the motion at Docket No. 26, terminate Veerapornphimon as a party in this action and amend the caption in this matter as it appears in this Opinion.

SO ORDERED.

Dated: September 17, 2015
    New York, New York

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>
_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**